UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

JAMES OSCAR WRIGHT, )
                               )
       *Plaintiff*, )    C.A. No.    13-358 Erie
                               )
    v. )
                               )    ORDER ADOPTING IN PART THE
                               )    REPORT AND RECOMMENDATION
DEBRA SAUERS, et al., )    AND GRANTING SUMMARY
                               )    JUDGMENT FOR ALL DEFENDANTS
                               )    EXCEPT FOR ANTHONY GATTO
      *Defendants*. )
_____ )

       Plaintiff James Oscar Wright, a former state prisoner in Pennsylvania, brings the present action under 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights. Specifically, in Count I, Plaintiff alleges that certain Pennsylvania Department of Correction employees ("the Commonwealth Defendants") used excessive force when, on July 23, 2013, they restrained him near his cell, resulting in Plaintiff suffering a broken foot. In Count II, Plaintiff alleges that the Commonwealth Defendants—along with Defendant Nancy McGarvie, a prison doctor, and Defendant Corizon Health, Inc. ("Corizon"), the private company tasked with providing health care to the prison's inmates—acted with deliberate indifference to Plaintiff's serious medical needs following the July 23, 2013 incident by not timely and adequately providing Plaintiff with proper medical care.[1] The Commonwealth Defendants consist of the following employees of State Correctional Institute at Forest ("SCI Forest"), the prison in which Plaintiff was formerly incarcerated: Debra Sauers, the Superintendent; Eric Tice, the Deputy Superintendent; Michael Overmyer, the Deputy Superintendent for Centralized Services; Raymond Burkhart and Anthony Gatto, corrections officers; and Kim Smith, a health care administrator. Pl's. Third Am. Compl.,

---

[1] Plaintiff previously dismissed his claims against Wexford Health Sources, Inc., and Daniel Clever, respectively.

Dkt. 90 ¶¶ 8-16. The Commonwealth Defendants have moved for summary judgment as to Counts I and II. Defendants McGarvie and Corizon, respectively, have moved for summary judgment on the sole count against them, Count II.

Before the Court is the Report and Recommendation ("R&R") of the Honorable Susan Paradise Baxter, United States Magistrate Judge, recommending that, as to Count I, the Court deny summary judgment for one of the Commonwealth Defendants—Anthony Gatto, the corrections officer who Plaintiff claims used excessive force—and grant summary judgment for the remaining, supervisory Commonwealth Defendants. The Commonwealth Defendants did not file objections as to the recommendation regarding Gatto.[2]

As to Count II, Magistrate Judge Baxter recommends that the Court grant summary judgment for the Commonwealth Defendants and for Defendant McGarvie, but deny summary judgment for Defendant Corizon. Plaintiff filed objections to—and, later, a response regarding—the recommendation that the Court grant summary judgment as to Count II for the Commonwealth Defendants and McGarvie. Corizon filed objections—and, later, a response to Plaintiff's Objections. McGarvie filed a response in opposition to Plaintiff's Objections.

Having reviewed the Complaint, the parties' briefs, and the R&R, and finding no objection as to the recommendation that, as to Count I (excessive force), the Court will deny summary judgment for Defendant Gatto and grant it for the remaining Commonwealth Defendants, the Court hereby adopts the decision of the Magistrate Judge. Having further reviewed the record and the objections on the remaining claims at issue, the Court adopts in part the decision of the Magistrate Judge as to Count II (deliberate indifference to Plaintiff's serious medical needs).

---

[2] The Commonwealth Defendants filed a response in opposition to Plaintiff's Objections containing only a request that the Court adopt the R&R "for the reasons set forth by Judge Baxter in the R&R." Dkt. 185.

# I. LEGAL STANDARDS

## A. Standard of Review

When a party objects to an R&R, the district court must review *de novo* those portions of the R&R to which objection is made. *See United States v. Raddatz*, 447 U.S. 667, 673 (1980); Fed. R. Civ. P. 72(b). However, to obtain *de novo* review, a party must clearly and specifically identify those portions of the R&R to which it objects. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). The district court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge. *Raddatz*, 447 U.S. at 673-74.

## B. Summary Judgment

Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir. 1990) (citing *Sorba v. Pennsylvania Drilling Co.*, 821 F.2d 200, 204 (3d Cir.1987), *cert. denied,* 484 U.S. 1019 (1988)).

## I. PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM (COUNT II)

The facts of this case are presented fully in the R&R and in the Court's previous orders. *See* Dkt. 182; *see also* Dkt. 76. Accordingly, the Court addresses here only those facts and legal concepts relevant to the parties' objections and responses thereto. *See* Corizon's Objs., Dkt. 183; Pl's. Objs., Dkt. 184; Corizon's Resp. to Pl's. Objs., Dkt. 187; Pl's. Resp. to Corizon's Objs., Dkt. 187; McGarvie's Resp. to Pl's. Objs., Dkt. 188. The gravamen of the parties' objections concern whether Plaintiff properly exhausted his administrative remedies following the July 23, 2012 incident that resulted in Plaintiff's foot being broken. *See* Dkts. 183-188.

### A. The Prison Litigation Reform Act's Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that prisoners exhaust their available administrative remedies before filing any suit involving prison life, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Exhaustion is required "even where the relief sought—monetary damages—cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). In order to properly exhaust their claims, prisoners must comply with the administrative review process set forth by the relevant prison's grievance process, including properly availing themselves of "all administrative remedies." *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004); *see also Jones*, 549 U.S. at 218. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *accord Spruill*, 372

F.3d at 231 ("Mandatory exhaustion (with a procedural default component) ensures that inmate grievances will be addressed first within the prison's own system—in this respect, the PLRA is thus appropriately defederalizing"). Failure to exhaust is an affirmative defense; prisoner-plaintiffs are not required to plead or demonstrate exhaustion. *Jones*, 549 U.S. at 216.

Here, all of the Defendants affirmatively pled that Plaintiff failed to exhaust his administrative remedies pursuant to the PLRA. Commonwealth Defs.' Answer, Doc. 93 at 5; McGarvie Answer, Doc. 95 at 27; Corizon Answer, Doc. 98 at 15.

**B. Plaintiff Failed to Exhaust His Administrative Remedies**

Pennsylvania's Department of Corrections Inmate Grievance System consists of a three-step administrative process. *Booth v. Churner*, 206 F.3d 289, 293 (3d Cir. 2000), *aff'd,* 532 U.S. 731, (2001) (citing Commonwealth of Pennsylvania, Department of Corrections, Consolidated Inmate Grievance Review System, Policy No. DC–ADM 804 §§ VI.A.1, VI.B.2.). Grievances must be submitted in writing and within 15 days of the underlying events. DC-ADM 804 § I. The Grievance System provides that the grievance will be investigated; and, within ten working days of its receipt, the grievant will be provided a written response that includes a "brief rationale summarizing the conclusion and any action taken or recommended to resolve every issue[.]" If the initial grievance is denied, the grievant may appeal the denial within ten working days to the Facility Manager. The Facility Manager and its personnel will have ten working days within which to notify the grievant of their decision. If the grievance is denied at this level, the grievant may, within fifteen days, appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") for final review. The grievant must provide SOIGA "with all required documentation relevant to the appeal. A proper appeal for final review must include" legible copies of the inmate's: initial grievance; initial review response/ rejection and/ or the remanded

initial review response/ rejection; first appeal; the Facility Manager's decision; and a written appeal to SOIGA. DC-ADM 804 § II. Grievants are advised that their "failure to provide any of the documentation [] may result in the appeal being dismissed[.]" *Id.*[3] SOIGA has 30 working days within which to respond to a grievant. *Id*.

Grievance 431502 forms the basis of Plaintiff's denial of adequate medical care claim (Count II). Pl's. Opp'n to Commonwealth Defs'. Mot. Summ. J., Dkt. 147 at 26-27; Pl's. Opp'n to McGarvie Mot. Summ. J., Dkt. 151 at 6-7. In Grievance 431502, Plaintiff complained that on October 8, 2012, while Plaintiff was in the prison yard, Defendant Burkhart took from his cell a "medical boot for [Plaintiff's] foot and ankle" that Plaintiff had "removed to see how swollen [his] foot was." Dkt. 118, Ex. 10. Burkhart, Plaintiff grieved, "does not have a medical degree and should not have removed said boot from [Plaintiff's] cell." Plaintiff's Grievance was "rejected" because he had not provided a "Confiscated Items Receipt" or other documentary "proof" that the confiscated property was once in Plaintiff's possession. *Id*. Such documentary proof must be attached to any grievance involving confiscated property. DC-ADM 804 §§ 1(b)(11), 2(A)(2)(h).

Plaintiff, in response, submitted another Initial Grievance, listing the (same) 431502 number on the form, and alerting the reviewing official that "the documentation that [the prison] require[s] is in the medical records." Plaintiff's medical records, Plaintiff grieved, document that Plaintiff's foot had been broken in July, and that the confiscated boot was prescribed to help heal his injury. *See* Dkt. 118, Ex. 10.

Plaintiff's Grievance was substantively denied by Defendant Smith, a heath care administrator at SCI Forest. Dkt. 118, Ex. 10. In her denial, Smith noted that the confiscated

---

[3] The Department provides indigent inmates up to $10.00 per month for making copies of these documents and for postage. DC-ADM 804 § II.

6

splint had been placed on Plaintiff more than two months prior. The splint, Smith explained, "is not as simple as a medical boot that you can take on and off and re-apply as preferred. The splint (boot) is similar to a cast and is to be left on until follow up with [an] orthopedic doctor." To remove the boot, Smith wrote, Plaintiff "had to remove the cast sock, cast padding, and cast plaster, and ace wraps. Healthcare items that are not used as intended or altered can be considered contraband and a security risk." Thus, Smith concluded, Burkhart was "correct in removing the useless altered cast from [Plaintiff's] cell to maintain safety and security."[4]

Plaintiff appealed Smith's denial. Plaintiff, in his appeal, and in addition to his complaints about Burkhart, grieved that he had never received crutches from the prison, and had only twice been given a wheelchair to keep off of his injured foot. The Facility Manager denied Plaintiff's appeal, finding that "Burkhart confiscated a splint boot that [Plaintiff] had rendered useless." Plaintiff, in turn, submitted a handwritten appeal to SOIGA. At this final stage, SOIGA dismissed Plaintiff's Grievance because Plaintiff had not "provided this Office with the required documentation for proper review." The record does not indicate that Plaintiff took any further action as to this Grievance.

   *1. Plaintiff's Claims Against McGarvie and the Commonwealth Defendants*

Magistrate Judge Baxter, in relevant part in her R&R, found that Plaintiff had not properly exhausted Grievance 431502. Dkt. 182 at 19-24. Specifically, as to McGarvie and the Commonwealth Defendants, Magistrate Judge Baxter found that Plaintiff, with his handwritten final appeal, did not submit to SOIGA either of his initial 431502 Grievances nor their subsequent denials and appeals. *Id.* at 21 (citing Varner Aff. ¶¶ 3-6). Having not complied with the Grievance System detailed in DC-ADM, Magistrate Judge Baxter found that Plaintiff did not

---
[4] Smith, in her denial, further noted that Plaintiff had been scheduled to see the orthopedic doctor five days before Plaintiff removed—and Burkhart confiscated—the splint. Plaintiff, however, "refused" to go to his appointment. Dkt. 118, Ex. 10. Smith scheduled another consultation for Plaintiff with the orthopedic surgeon. *Id.*

7

properly exhaust the grievance procedure for his medical claims against the Commonwealth Defendants and McGarvie. *Id.*

Plaintiff, in his Objections, continues to assert that in regards to 431502, Plaintiff's "full compliance" with the Grievance System procedures was "impossible." Dkt. 184 at 6-7. Specifically, Plaintiff asserts, grievants must attach to any grievance involving confiscated property a "Confiscated Items Receipt." *Id.* at 6 (citing DC-ADM 804 §§ 1(b)(11), 2(A)(2)(h)). Burkhart, however, in his deposition, testified that he never filled out a Confiscated Items Receipt, thereby making it impossible for Plaintiff to have submitted one with his Grievance. *Id.* at 6-7 (citing Burkhart Dep. at 59:13-19). SOIGA, at the final stage, dismissed Plaintiff's appeal, informing him that he had not provided the required documentation. *Id.* Plaintiff, in his Objections, contends that the missing documentation to which SOIGA refers, was the (non-existent) Confiscated Items Receipt. Dkt. 184 at 6-7. Grievants, Plaintiff asserts, need only avail themselves of "available" administrative remedies in order to properly exhaust their claims. *Id.* (citing *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003)). Thus, Plaintiff argues, in submitting to SOIGA the 431502 documentation that he had, Plaintiff properly exhausted his administrative remedies in regards to Grievance 431502. *Id.* Plaintiff mischaracterizes the record.

The Chief Grievance Officer of SOIGA, in her affidavit, swears that SOIGA dismissed Grievance 431502 because Plaintiff "sent this Office only his handwritten appeal argument . . . [and] failed to provide any of the underlying grievance, initial review, appeal to facility manager, or facility manager's decision[.]" Varner Aff. ¶¶ 4, 6. Thus, the Confiscated Items Receipt (or lack thereof) was immaterial to Plaintiff's failure to comply with the Grievance System procedures. *See id.* Moreover, the record is clear that Plaintiff had properly exhausted at least

8

two other Grievances.⁵ The record also makes clear that, in response to an unrelated appeal, Plaintiff received from SOIGA a letter informing him of the specific documentation required to receive a final meritorious review.⁶ Accordingly, there can be no doubt that Plaintiff knew of what the required documentation consisted, and that he knew how to properly submit it SOIGA. *See* Dkt. 118, Exs. 11, 23, 24.

Plaintiff, in his Objections, urges the Court not to "credit" SOIGA's Chief Grievance Officer's affidavit because of "evidence . . . indicating that prison officials made the final appeal process unavailable to [Plaintiff]." *Id.* at 8. Plaintiff does not, however, provide the Court with any such "evidence" that demonstrates that appellate process "unavailable" to him generally, or in regards to Grievance 431502. *See generally id.* A review of the record similarly provides none. Moreover, as previously stated, Plaintiff properly exhausted at least two other grievances during the relevant time period. *See* Dkt. 118, Exs. 11, 23.

Plaintiff further objects that this Affidavit "cannot prove that, even if the underlying appeal documents were in the file, SOIGA would have decided [Plaintiff's] appeal on the merits[.]" Dkt. 184 at 8. The relevant inquiry, however is not how SOIGA would have ruled; instead, it is whether Plaintiff properly complied with the Grievance System procedures by

---

⁵ Plaintiff properly exhausted Grievance 422147, which forms the basis of his excessive force claim (Count I). *See* Dkt. 118, Ex. 11. Specifically, in Grievance 422147, filed on July 27, 2012, Plaintiff alleged that Defendant Gatto used excessive force against him on July 23, 2012. Dkt. 118, Ex. 11. Having received initial and intermediate denials, Plaintiff appealed to SOIGA. SOIGA, having received and reviewed "the entire record of this [G]rievance," denied as non-meritorious Plaintiff's Grievance. *Id.*

Plaintiff also properly exhausted Grievance 447997, which he filed on February 12, 2013. Specifically, in 447997, Plaintiff complained generally of pain and that he was receiving only Motrin. Dkt. 117, Ex. 23. Having received initial and intermediate denials, Plaintiff appealed to SOIGA. SOIGA, having received and reviewed "the entire record of this [G]rievance," and having solicited input from the Bureau of Health Care Services, denied as non-meritorious Plaintiff's Grievance.

⁶ In response to Plaintiff's final appeal of Grievance 428449, SOIGA informed Plaintiff that his Grievance had been marked "File Without Action/ Pending," and alerted Plaintiff that he needed to submit a "legible copy of [his] initial grievance;" an "initial review response/ rejection;" a "legible copy of [his intermediate] appeal to Facility Manage;" and the "Facility Manager's decision/ response." The record does not indicate that Plaintiff took any further action as to this Grievance. Dkt. 118, Ex. 24.

9

submitting the required document to SOIGA. *See, e.g.*, *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). Here, all administrative remedies were available to Plaintiff; and proper exhaustion required that Plaintiff submit to SOIGA Grievance 431502 and the corresponding intermediate denials and appeals. *See id.*; DC-ADM 804 § II. Accordingly, Plaintiff did not properly exhaust Grievance 431502, and, therefore, his medical claims contained in Count II. *See, e.g.*, *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000). Thus, Magistrate Judge Baxter correctly recommended that the Court grant summary judgment as to Plaintiff's medical claims against McGarvie and the Commonwealth Defendants.

    *2. Plaintiff's Claims Against Corizon*

Corizon, in its Objections, asserts that the R&R "failed to apply the reasoning and determination that [P]laintiff failed to exhaust the grievance process to Corizon[.]" Dkt. 183 at 1-3. Plaintiff, in response, asserts that unlike the Commonwealth Defendants and McGarvie, Corizon, in its motion for summary judgment, "did not even mention [exhaustion], let alone establish Corizon's entitlement to summary judgment on that basis." Dkt. 187 at 3 (citing Corizon's Mot. Summ. J., Dkt. 137, and Corizon's Reply, Dkt. 187). Accordingly, Plaintiff asserts, Corizon waived its right to this affirmative defense. *Id.* at 2-5. Corizon counters that in its motion for summary judgment, it "incorporated by reference arguments made by co-defendants." Dkt. 183 at 1 (citing Dkt. 137 at 13). Moreover, Corizon asserts, in its Answer, it affirmatively pled Plaintiff's failure to exhaust his administrative remedies. *Id.* (citing Dkt. 98 at 14-15).

Corizon did not clearly put before Magistrate Judge Baxter its argument that Plaintiff failed to exhaust his claims against Corizon. *See* Corizon's Mot. Summ. J., Dkt. 137. Nevertheless, failure to exhaust is an affirmative defense that Corizon pled in its Answer. *Jones*

*v. Bock*, 549 U.S. 199, 216 (2007); Dkt. 98 at 14-15. The PLRA's exhaustion requirement is clear, and it applies to all suits involving prison life. 28 U.S.C. § 2254(b)(1); *Porter v. Nussle*, 534 U.S. 516 (2002). Moreover, Corizon is "a business corporation hired by the PA DOC to provide health care to the inmates at SCI Forest." Compl., Dkt. 90 ¶ 16. Accordingly, it has no role in grievance record-keeping. Thus, though Corizon could have more obviously and artfully incorporated by reference its exhaustion defense, it would have been cumulative for Corizon to fully brief in its motion for summary judgment Plaintiff's failure to exhaust when the Commonwealth Defendants and McGarvie had done so already. Plaintiff's claims against Corizon stem from Grievance 431502. *See* Pl's. Opp'n to Commonwealth Defs'. Mot. Summ. J., Dkt. 147 at 26-27; Pl's. Opp'n to McGarvie Mot. Summ. J., Dkt. 151 at 6-7; *see generally* Pl's. Objs., Dkt. 184; Pl's. Resp. to Corizon's Objs., Dkt. 187. For the reasons the Magistrate Judge already found, therefore, Plaintiff did not properly exhaust the grievance procedure for his medical claims against Corizon. *See, e.g.*, *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000). Thus, as to Count II, the Court grants summary judgment for Corizon.

## II. CONCLUSION

Having reviewed the R&R, the parties' briefs, the parties' objections, and all other material before the Court, it is hereby ordered that:

1) The Court **ADOPTS** the Report and Recommendation, Docket No. 182, as to Count I;

2) The Commonwealth Defendants' Motion for Summary Judgment, Docket No. 115, is **GRANTED** as to Count I for all of these Defendants except for Anthony Gatto;

3) The Court **ADOPTS IN PART** the Report and Recommendation, Docket No. 182, as to Count II;

11

4) The Commonwealth Defendants' Motion for Summary Judgment, Docket No. 115, is **GRANTED** as to Count II for all of these Defendants;

5) Defendant McGarvie's Motion for Summary Judgment, Docket No. 140, is **GRANTED**;

6) Defendant Corizon's Motion for Summary Judgment, Docket No. 137, is **GRANTED**;

7) All Defendants other than Anthony Gatto are **DISMISSED**;

8) The Clerk shall send copies of this Order to the parties.

**IT IS SO ORDERED.**

Dated this 31st day of March, 2017.

*Barbara J. Rothstein*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE