UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES OSCAR WRIGHT, | ) | |
|     Plaintiff, | ) | C.A. No. 13-358 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| DEBRA K. SAUERS, et al., | ) | |
|     Defendants. | ) | |

# MEMORANDUM OPINION[1]

United States Magistrate Judge Susan Paradise Baxter

## I. Introduction

### A. Relevant Procedural History

Plaintiff James Oscar Wright initiated this civil rights action pursuant to 42 U.S.C. § 1983 on December 13, 2013, by filing a *pro se* complaint. Plaintiff subsequently filed an amended complaint, also *pro se*, on May 5, 2014. [ECF No. 17]. Thereafter, counsel entered an appearance on Plaintiff's behalf and filed a second amended complaint. [ECF No. 44]. Named as Defendants in the second amended complaint are: Debra K. Sauers, former Superintendent at SCI-Forest ("Sauers"); Michael Overmyer, former Deputy Superintendent for Facilities Management at SCI-Forest ("Overmyer"); Eric Tice, former Deputy Superintendent for Centralized Services at SCI-Forest ("Tice"); Corrections Officers Anthony Gatto (incorrectly identified by Plaintiff as "Gotto") ("Gatto"), D.E. Clever ("Clever"), and Lt. Raymond Burkhart ("Burkhart"); Nancy McGarvie, Medical Director at SCI-Forest ("McGarvie"); Kim Smith,

---

[1] Subsequent to the resolution of initial motions for summary judgment, the remaining parties consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 4, 205].

1

Corrections Health Care Administrator at SCI-Forest ("Smith"); and Wexford Health Sources, Inc. ("Wexford").

On August 13, 2015, this Court issued a Report and Recommendation ("R&R") to deny the motion to dismiss, or in the alternative, motion for summary judgment filed by Defendants Wexford and McGarvie. [ECF No. 76]. The R&R was adopted by Order of District Judge Barbara Rothstein, dated September 10, 2015. [ECF No. 82]. Soon after, this Court entered an Order granting Plaintiff leave to file a third amended complaint to add Defendant Corizon Health, Inc. ("Corizon") as the employer of Defendant McGarvie. [ECF No. 89]. Plaintiff's third amended complaint was subsequently docketed on October 2, 2015 [ECF No. 90], and is the operative pleading in this case.[2] For ease of reference, all Defendants other than Defendants Gatto, McGarvie, Wexford, and Corizon will be collectively referred to as "Commonwealth Defendants."

In his third amended complaint, Plaintiff claims that (1) Defendants Gatto, Clever, Sauers, Overmyer, and Tice violated his Eighth Amendment right to be free from cruel and unusual punishment by using and/or allowing the use of excessive force against him, and (2) Defendants Sauers, Overmyer, Tice, Gatto, Burkhart, Smith, McGarvie, Wexford, and Corizon were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. As relief for his claims, Plaintiff seeks injunctive relief and monetary damages.

The parties completed discovery on or about October 30, 2015. On January 14, 2016, the Commonwealth Defendants, including Gatto, filed a motion for summary judgment as to all

---

[2] No substantive changes were made to the second amended complaint other than the addition of Defendant Corizon. The third amended complaint merely states the same allegations against both Defendants Wexford and Corizon. All other Defendants, and the allegations against them, remain the same.

claims against them. [ECF No. 115]. With the exception of Plaintiff's excessive force claim against Gatto, the Commonwealth Defendants raised Plaintiff's failure to properly exhaust available administrative remedies as a complete defense, due to his failure to appeal initial grievances and his failure to grieve specific incidents alleged in his operative complaint. On February 26, 2016, Defendant Corizon filed a motion for summary judgment as to Plaintiff's claims against it on the grounds that the evidence was insufficient to establish the existence of a policy or custom of inadequate medical care or a failure to supervise and train personnel. [ECF No. 137]. On February 29, 2016, Defendants Wexford and McGarvie filed their own motion for summary judgment as to all of Plaintiff's claims against them, raising, *inter alia*, failure to exhaust administrative remedies as a complete defense. The parties stipulated to the dismissal of all of Plaintiff's claims against Defendants Wexford and Clever, and those Defendants were terminated from this case. [ECF Nos. 175 and 176].

On September 1, 2016, this Court issued an R&R recommending that: (1) the Commonwealth Defendants' motion for summary judgment be granted as to Plaintiff's claims against all Commonwealth Defendants, except Defendant Gatto, for failure to exhaust administrative remedies; (2) Defendant Corizon's motion for summary judgment be denied as to Plaintiff's claims that Corizon had a custom of not following established policies, and failed to train or supervise its employees, with regard to the provision of special medical items that implicate security concerns; and (3) Defendant McGarvie's motion for summary judgment be granted for failure to exhaust administrative remedies. [ECF No. 182]. On September 14, 2016, Defendant Corizon filed timely objections to this Court's R&R, raising for the first time Plaintiff's failure to exhaust administrative remedies as a complete defense to Plaintiff's claims. [ECF No. 183]. Plaintiff opposed consideration of the issue, contending that Defendant Corizon

could not establish excusable neglect to permit the belated assertion of exhaustion as a complete defense. [ECF No. 187, at pp. 2-5].

By Order entered March 31, 2017, Judge Rothstein adopted this Court's R&R as to the Commonwealth Defendants' motion for summary judgment, denying summary judgment as to Plaintiff's excessive force claim against Defendant Gatto, granting summary judgment to the remaining Commonwealth Defendants on the grounds that Plaintiff failed to exhaust available administrative remedies against them, and granting summary judgment in favor of Defendant McGarvie, concluding that Plaintiff did not properly exhaust his medical claims against her. [ECF No. 189]. As to Defendant Corizon, however, Judge Rothstein determined that, while Corizon failed to raise the issue of exhaustion in its initial summary judgment motion, Corizon was entitled to judgment in its favor because it pled failure to exhaust as an affirmative defense in its Answer to Plaintiff's complaint. In addition, Judge Rothstein concluded that presenting and fully briefing the issue would have been cumulative, given that Plaintiff's failure to exhaust medical claims had been raised and briefed by the Commonwealth Defendants and McGarvie. (Id., at pp. 10-11). Accordingly, the Court entered judgment in favor of Defendant Corizon as to all of Plaintiff's claims against it based on Plaintiff's failure to exhaust administrative remedies. [ECF No. 189]. Accordingly, all Defendants other than Defendant Gatto were terminated from this case and the only claim remaining is Plaintiff's excessive use of force claim against Defendant Gatto.

On June 9, 2017, Defendant Gatto filed a motion for leave to file a second motion for summary judgment [ECF No. 202], contending that Plaintiff procedurally defaulted on his remaining excessive force claim because Plaintiff failed to request monetary damages when he submitted his original inmate grievance. Counsel for Defendant Gatto asserted that he only

recently learned of "substantial case law" concluding that an inmate's failure to comply with all grievance form instructions, including a demand for monetary or other remedy available at law, foreclosed further relief.[3] [ECF No. 203, at p. 1]. Over Plaintiff's objections that Defendant Gatto failed to show good cause or excusable neglect for the delay in raising exhaustion, Judge Rothstein issued an Order [ECF No. 206] granting Defendant Gatto leave to file the requested motion [ECF No. 203-2], stating:

> Here, Defendant affirmatively pled that plaintiff failed to exhaust his administrative remedies. Answer, Doc. 93 at 5…. While unfortunate that Defendant did not previously brief his exhaustion argument as to Grievance 422147, Defendant's 'failure to make a timely dispositive motion based on this affirmative defense does not mean that [he] ha[s] waived the defense.' Sanders v. Beard, 2013 WL 1703582, at *4 (M.D. Pa. Apr. 19, 2013)(citing Drippe v. Gototweski, 434 Fed. Appx. 79, 81 (3d Cir. 2011). Moreover, whether a prisoner has properly exhausted his administrative remedies is a question of law, and thus for the court to determine (citations omitted).

(ECF No. 206, at pp. 2-3). Plaintiff has since filed a response in opposition to Defendant Gatto's motion. [ECF No. 209]. This matter is now ripe for consideration.

### B.    Relevant Factual History[4]

Plaintiff is an inmate formerly incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest").[5] On July 23, 2012, while Plaintiff was housed in

---

[3] Gatto cites the following cases in support of his contention that Plaintiff has procedurally defaulted on his remaining claim by failing to include a demand for monetary relief in his initial grievance form as required by DC-ADM 804: Mobley v. Snyder, 2015 WL 5123909 at *7-9 (M.D. Pa. 2015); Sanders v. Beard, 2013 WL 1703582 at *6 (M.D. Pa. 2013), Collins v. Walsh, 2012 WL 3536803 at *3-4 (M.D. Pa. 2012).

[4] The factual history recited herein is gleaned from the Defendants' concise statements of material facts [ECF Nos. 117, 137, 141], and Plaintiff's responses thereto [ECF Nos. 148, 150, 152], to the extent the facts are undisputed and/or amply supported by the factual record before this Court. Where there are discrepancies in the parties' interpretations of the documentary evidence of record, the Court draws from and cites the documents themselves.

[5] Plaintiff has since been released from prison and is represented by counsel.

SCI-Forest's restricted housing unit ("RHU"), Corrections Officers Defendant Gatto and former Defendant Clever escorted Plaintiff to the RHU shower. (ECF No. 117, Commonwealth Defendants' Concise Statement of Undisputed Material Facts, at ¶¶ 1, 3). At the same time, security team officers Sharrar and Dombrowski went to Plaintiff's cell to conduct a random cell search. (Id. at ¶ 4). Plaintiff became upset in the shower because he did not want his cell searched. (Id. at ¶ 6). When Plaintiff finished his shower, he was handcuffed and escorted by Gatto and Clever to stand outside of his cell so he could be present for the cell search. (Id. at ¶ 10).[6] Gatto held Plaintiff by a tether during the escort. (Id. at ¶ 11). Plaintiff was angry that he was wet and did not have the opportunity to get dressed, and he stated three times that the officers could not search his cell. (Id. at ¶¶ 16-17). Nonetheless, Officer Dombrowski began to search Plaintiff's cell, which further angered Plaintiff. (Id. at ¶¶ 18, 20). Plaintiff became verbally aggressive, pulled and tugged on the tether, turned to face Defendant Gatto, and then forcefully kicked his left foot at Defendant Gatto's lower leg. (Id, at ¶¶ 26-28, 31; ECF No. 118-1, DVAR Video, at 2:39:28-49).[7] Defendant Gatto and Clever immediately attempted to take Plaintiff to the ground, but Plaintiff resisted. (ECF No. 118-1, DVAR Video, at 2:39:50). When Plaintiff was ultimately brought to the ground, Clever fell on Plaintiff's right foot, causing Plaintiff to feel a sharp pain in the foot. (ECF No. 117, at ¶¶ 38-39; ECF No. 118-9, Plaintiff's Deposition Transcript, at pp. 17, 27).[8] It was later revealed that Plaintiff suffered a fracture of

---

[6] Plaintiff denies that he asked to be present for the search. (ECF No. 148, Plaintiff's response to Commonwealth Defendants' Concise Statement of Material Facts, at ¶ 10).

[7] Although Plaintiff disputes that he was verbally aggressive, pulled on the tether, and kicked Defendant Gatto with his left foot, the DVAR video footage of the incident conclusively affirms these facts.

[8] The Court notes, and the parties acknowledge, that there is a twelve second gap in the DIVAR footage, during which Plaintiff was taken to the ground and the injury to his right foot occurred. Nonetheless, there appears to be no

6

three metatarsal joints, and after a period of conservative treatment, Plaintiff underwent surgical repair of the affected joints.

On July 27, 2012, Plaintiff filed Grievance 422147, describing the incident and alleging an excessive use of force claim against Clever and Gatto. [ECF No. 203-5, at p. 5]. The Department of Corrections Grievance Policy in effect at the time of Plaintiff's incident sets forth the following requirements for submitting a grievance:

> ***The statement of facts must not exceed two pages and must be handwritten or typed on writing paper (one DC-804, Part 1 and one one-sided 8 ½" x 11" page). In Section B of the DC-804, Part 1, the inmate should include information on any attempt to resolve the matter informally. The inmate will also specifically state any claims he/she wishes to make concerning violations of Department directions, regulations, court orders, or other law. If the inmate desires compensation or other legal relief normally available from a court, the inmate shall request the specific relief sought in his/her initial grievance.***

DC-ADM 804 §1.A.12 (bold and italics in original). [ECF No. 2-3-5, p. 19]. The Official Inmate Grievance form used by Plaintiff to submit his complaint states that an inmate is to "[p]rovide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 and one one-side 8 ½" x 11" page). State all relief you are seeking." [ECF No. 203-5, at p. 5]. Plaintiff concedes that, when completing the form, he failed to ask for any relief, monetary or otherwise.

In response to Plaintiff's grievance, Lieutenant Carter ("Carter") of SCI-Forest's Security Department conducted an investigation. (ECF No. 117, at ¶¶ 71-72). Carter reviewed the DIVAR video of the incident multiple times, and interviewed Gatto, Clever, Sharrar, and Dombrowski as part of his investigation. (Id. at ¶¶ 86, 89). As a result of his investigation, Carter concluded that

---

dispute that Plaintiff's foot injury occurred as a result of Clever coming into contact with it when Plaintiff was on the ground.

all staff involved acted professionally and used the minimum amount of force necessary to control a combative inmate. (Id. at ¶ 90). Thus, no disciplinary action was recommended against any of the involved staff members. (Id. at ¶ 91). Former Defendants Tice, Overmyer, and Sauers reviewed Carter's report and agreed with his findings. (Id. at ¶ 95). Sauers then sent the report to the OSII Director, James Barnacle. (Id. at ¶ 96). Upon timely appeal and final review by the State Office of Inmate Grievances and Appeals ("SOIGA"), Plaintiff's Grievance was denied as non-meritorious.

Defendant Gatto now contends that, because Plaintiff failed to request monetary damages through his initial inmate grievance arising out of the incident at issue, he is precluded from obtaining recovery in this action. Plaintiff opposes the motion on the basis that he has substantially complied with the prescribed inmate grievance process, and contends that his failure to request a remedy does not bar his claim. Alternatively, Plaintiff argues that Defendant Gatto has waived exhaustion by failing to raise the issue in conjunction with his initial motion for summary judgment, and that compliance is otherwise excused by the resolution of the merits of his grievance.

### **C.** **Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (19896). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 quoting Fed.R.Civ.P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, … the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves…." Id. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.").

In considering these evidentiary materials, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment

motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations omitted). See also Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001) (when applying this standard, the court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson., 477 U.S. at 248, 255 ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).

## II. DISCUSSION

### A. Failure to Exhaust - Procedural Default

In resolving Defendants' initial motions for summary judgment, this Court explained that through the PLRA, Congress enacted a requirement that inmates exhaust "such administrative remedies as are available" before bringing suit to challenge prison conditions. [ECF No. 182]. 42 U.S.C. § 1997(e)a. The United States Supreme Court has repeatedly confirmed that "[t]here is no question that exhaustion is mandatory under the PLRA." Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1856 (2016), quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006), accord Jones v. Bock,

549 U.S. 199, 211 (2007). "And that mandatory language means a court may not excuse a failure to exhaust, even to take [] [special] circumstances into account." Ross at 1856.

Because the PLRA is a statutory exhaustion provision, "Congress sets the rules – and courts have a role in creating exceptions only if Congress wants them to. For that reason mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857. Accordingly, exhaustion is required regardless of the availability of the requested relief, and regardless of the nature of the underlying claim, whether it arises from excessive force, or a violation of the constitution. Id., citing, Booth v. Churner, 532 U.S. 731, 741 (2001); Porter v. Nussle, 534 U.S. 516, 520 (2002); Woodford, 548 U.S. at 91.

Additionally, exhaustion must be "proper," which "demands compliance with an agency's deadlines and other critical procedural rules." Woodford, at 90. This serves to protect "administrative agency authority" over the matter, giving an agency "an opportunity to correct its own mistakes … before it is haled into federal court," and "discourages 'disregard of [the agency's] procedures." Id. at 89, quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992).

Plaintiff cites several cases that predate Woodford, Jones v. Bock, and Ross, and argues that procedural default extends only to compliance with the grievance "process," in particular, to deadlines and stages of appeal, and not to the precise remedy sought. This interpretation fails for a number of reasons. Initially, the Supreme Court has held that compliance is measured by the particular agency's grievance policy, which the Court cannot ignore. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 219. In the case before it, the Supreme Court concluded that the inmate had properly exhausted his claim against all

11

defendants because neither the prison grievance process nor the PLRA required him to name each potential defendant in the grievance and, as such, imposition of such a requirement by the Court was unwarranted. Id.

However, in accord with Jones, where the provisions of a grievance process expressly require the identification of named defendants, or the use of specified appeal forms, or even the signature of an inmate, the Court of Appeals for the Third Circuit has found procedural default in an inmate's failure to comply as instructed. See, e.g., Rosa-Diaz v. Dow, 683 F. App'x 103, 105–06 (3d Cir. 2017) (inmate procedurally defaulted on claim where grievance policy required identification of defendants, and inmate failed to name particular defendant in grievance related to assault); Small v. Lanigan, 656 F. App'x 586, 589–90 (3d Cir. 2016) (prisoner's use of correspondence to appeal grievance denials was not authorized process and constituted procedural default, despite the fact that some of his letters were answered); Walker v. Glunt, 654 F. App'x 531, 534 (3d Cir. 2016) (prisoner did not exhaust his administrative remedies when he failed to sign his grievance, and signature held to constitute an important procedural requirement set by the institution); Mack v. Klopotoski, 540 F. App'x 108, 113 (3d Cir. 2013) (rejecting inmate's argument that he "technically" complied with grievance procedure and finding procedural default where inmate failed to provide photocopies of grievances and responses received to date to pursue internal appeal).

With regard to the grievance process at issue, a finding of procedural default is compelled by Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). In Spruill, the Third Circuit considered a prior version of DC-ADM 804, and rejected a claim of procedural default arising out of the inmate's failure to specifically request money damages. The grievance policy in effect at the time permitted but, importantly, did not *require* an inmate to identify the relief sought on his

grievance form. The optional nature of the provision was deemed incapable of giving rise to procedural default. In reaching this conclusion, the Court distinguished the provision from one that is mandatory (use of the word "may" as opposed to "shall"), and from a situation where the form on which grievances are filed includes a prompt to state the relief sought, thereby further putting an inmate on notice of the requirement. Id. at 233-234.

> The regulation … is a far cry from, say, a regulation that reads, "If the inmate desires compensation of other legal relief normally available from a court, the inmate shall request the relief with specificity in his/her initial grievance."

Id. The Court indicated that to the extent the DOC was dissatisfied with the ruling, it could "alter the grievance system to require more (or less) of inmates by way of exhaustion," while remaining consistent with the Constitution and the purposes of the PLRA. Id. at 235.

The DOC has since adopted the phrasing suggested in Spruill, and affirmatively places inmates on notice of the requirement to list any relief sought in both the grievance policy and on the initial grievance form. Much like failing to sign the grievance form, or failing to provide copies of certain documents on appeal, it is the level of detail required by the grievance process that defines the boundaries of exhaustion, which this Court is not at liberty to ignore. Jones, supra, at 219.

Finally, a requirement to set forth the compensation or legal relief requested places the agency on notice of the prisoner's demand or valuation of his or her claim, and furthers the PLRA's underlying litigation avoidance goals by supporting early settlement or accommodation. Proper exhaustion, including adherence to a requirement to delineate the relief requested, therefore promotes the efficiency recognized in Woodford, permitting claims to be "resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Woodford at 87. Given the underlying goals of the PLRA, and the state of the

13

law requiring adherence to clearly stated content requirements, this Court must conclude that the mandatory nature of the language at issue gives rise to procedural default as a result of Plaintiff's failure to set forth the desired monetary or other legal relief on his initial grievance form.

### B. Failure to Exhaust - Availability of Remedy

Plaintiff alternatively cites Ross for the proposition that the PLRA excuses his compliance with remedies that are "unavailable," and contends that because monetary awards are not available through the inmate grievance process, his failure to request such relief on his grievance form is excused. (ECF No. 209, at p. 14). Plaintiff further argues that at the time he filed his grievance, he was unaware of the extent of his injuries and so was not in a position to state the amount of monetary relief necessary to satisfy his claim. Both arguments are readily resolved in favor of the Defendant.

As an initial matter, Plaintiff misreads Ross, which identifies unavailability as an impediment to process. The Court identified three "kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief[:]"

> First … an administrative procedure is unavailable when (despite what regulations or guidance materials may promise), it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates…. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it …. And, finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Id. at 1859-60. In such instances, the PLRA's own textual exception to mandatory exhaustion precludes a finding of procedural default. Plaintiff has not alleged nor provided evidence of any such impediment rendering the DOC grievance process unavailable to him. Additionally, to the extent Plaintiff contends the grievance process is unavailable because monetary damages are not

recoverable through the DOC's internal procedures, § 1997e(a) requires administrative exhaustion "'irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001); and see, Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000) (claims for monetary relief are not excused from the exhaustion requirement). Furthermore, Plaintiff's argument is factually incorrect, as Defendant Gatto has supplied the declaration of an SOIGA Grievance Review Officer indicating that for all times relevant to this proceeding, monetary relief has been afforded through the DOC inmate grievance system and payments to inmates totaling $93,317.48 have been processed by the relevant agency. [ECF No. 214-1].

Finally, Plaintiff's argument that he was not aware of the extent of his injuries, and so was not able to estimate the amount of monetary relief to seek, is a nonstarter. The issue is whether Plaintiff sought monetary damages at all, not whether he was able to state with specificity the amount of monetary damages to which he was entitled. Though he may not have been aware of the full extent of his injuries, he certainly knew that he suffered an injury as a result of an alleged excessive use of force. This knowledge was sufficient to prompt him to seek monetary relief in whatever amount he deemed sufficient at that time. Thus, availability is not a bar to procedural default in this matter.

### C. Excused Noncompliance and Waiver

Plaintiff next invokes excused noncompliance and waiver to bar Defendant Gatto's assertion of exhaustion as a defense in this action. Plaintiff contends that because SCI Forest investigated the assault at issue and rendered a final disposition on the merits of his grievance, Plaintiff's noncompliance with the requirement to set forth particular items of relief in his initial grievance was excused. For this proposition, Plaintiff relies upon cases where an inmate failed to

identify a specific defendant by name in a grievance, Robinson v. Johnson, 343 Fed. Appx. 778, 781-82 (3d Cir. 2009), or cases from other jurisdictions excusing untimely grievances. Hammett v. Cofield, 681 F.3d 945, 947 (9th Cir. 2012); Maddox v. Love, 655 F3d 709, 722 (7th Cir. 2011). These cases are inapposite.

As made clear in Ross v. Blake, "[e]xhaustion is no longer left to the discretion of the district court." 136 S. Ct. at 1858, quoting Woodford, 548 U.S. at 85. Where, as here, there is no reasonable argument that the process was so opaque or confusing that no reasonable prisoner could use it, internal grievance review is not "unavailable" within the meaning of the PLRA's exception, and the inmate "should err on the side of exhaustion" by complete and proper compliance with all requirements. Id. at 1859. In this matter, the directions on the grievance form are clear, the requirement is explained in the policy, and the Court cannot excuse Plaintiff's failure to comply because his grievance was eventually denied as unfounded.

Finally, Plaintiff contends that Defendant Gatto's delay and lack of diligence in asserting exhaustion as a bar to Plaintiff's claim constitutes waiver of the defense. In response, Defendant Gatto correctly argues that the issue of waiver has been decided in his favor by Judge Rothstein in her order granting leave to file a second motion for summary judgment [ECF No. 206], which is the law of the case.

For the foregoing reasons, the second motion for summary judgment filed on behalf of Defendant Gatto [ECF No. 203-2] will be granted. An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: August 30, 2017